Frank BERNARDINI,
Plaintiff-Appellee,

v.

REDERI A/B SATURNUS, Defendant
and Third-Party Plaintiff-Appellant,

and

International Terminal Operating Co.,
Inc., Third-Party Defendant-Appellee.

No. 113, Docket 74–1404.

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1975.

Decided March 11, 1975.

Joseph T. Stearns, New York City (Haight, Gardner, Poor & Havens, New York City, of counsel), for defendant and third-party plaintiff-appellant.

James D. Auslander, New York City (Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellee Bernardini.

Albert V. Testa, New York City (Alexander, Ash, Schwartz & Cohen, New York City, of counsel), for third-party defendant-appellee International Terminal Operating Co., Inc.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal by the defendant and third-party plaintiff Rederi A/B Saturnus ("Shipowner") from a judgment rendered against it after trial before the Honorable Robert J. Ward and a jury. Plaintiff-appellee, a longshoreman, brought suit to recover damages on his claim of negligence and unseaworthiness for an injury to his right shoulder, which he alleged he sustained on October 28, 1969 aboard the Shipowner's M/S SVENSKSUND (the "Vessel") at Pier 21, Brooklyn, New York. At the time, plaintiff was employed by third-party defendant-appellee International Terminal Operating Co., Inc. (the "Stevedore").

After trial, the jury returned a special verdict, pursuant to F.R.Civ.P. 49(a), finding defendant liable in negligence and awarding plaintiff $10,000 in damages. The jury also found, however, that plaintiff had not proven that the Vessel was in an unseaworthy condition which proximately caused plaintiff's injury. The special verdict also indicated the jury's conclusion that plaintiff had not been contributorily negligent and that the Stevedore had not breached its warranty of workmanlike performance.

The Shipowner moved for judgment n. o. v. and for a new trial on all the issues of the case, which motion was denied by the trial judge. The serious issue raised on appeal is whether or not the jury's special verdict that the Shipowner was negligent is consistent with its special verdict that the Vessel was not unseaworthy, a problem with which we would not be concerned in the case of a general verdict.

The facts viewed most favorably to the plaintiff are as follows. Plaintiff, a longshoreman, was sent from the hiring hall to work aboard the Vessel, which he had never before seen or worked upon. At the dock, he was told by the timekeeper, an agent of the Stevedore, to report in the hold of the number 4 hatch. Upon boarding the Vessel, which was moored starboard side to the pier, he walked aft to the forward part of the number 4 hatch. There he looked for the hatch ladder and when he could not find it, walked to the offshore side where he sought directions from another longshoreman who was pulling on wires as he rerigged the boom. Directed to the aft and inshore side of the hatch, plaintiff walked aft around the hatch and forward on the inshore side.

At this point, plaintiff's attention was momentarily diverted upward by a cracking noise in the rigging, so he paused and looked up to assure himself that nothing untoward was happening. He then proceeded forward and without warning came upon spots of light colored oil or grease on the gray, dirty deck. Plaintiff attempted to avoid stepping on the grease, but nonetheless slipped, lost his balance, and then tripped over a two-high pile of pallets which were stacked across the deck from the hatch coaming to the deck rail. He fell in twisting motion and struck his right shoulder on the coaming flange, which protruded about four inches from the coaming and was three to four feet above the deck. He landed on his back. After the accident, plaintiff reported to the timekeeper that he had tripped over the pallets, but did not mention the slippery deck. The plaintiff testified that after the fall he saw heel and scuff marks through the various spots of oil or grease. There was no other evidence that there had been oil or grease on the deck.

The Shipowner defended on two alternative bases—first, that the accident was faked by plaintiff and, second, that if the accident did occur, the injuries sustained by plaintiff were minor and not permanent. The second argument has not been pressed on appeal. The Shipowner, however, does pursue the first argument vigorously here, relying primarily on the testimony of the Vessel's First Officer, Rune Stahl. Stahl testified that he observed the plaintiff when the plaintiff first came aboard at 8:45 a. m., spoke briefly to him, and then watched him cross in front of the forward part of No. 4 hatch to the offshore side. Thirty seconds to a minute later, Stahl said, he saw the plaintiff come

around the end of the Vessel and start forward on the inshore side alongside the No. 4 hatch. Stahl testified that he kept the plaintiff continuously in view. When the plaintiff was some 30 feet from him, he saw the plaintiff, who was walking toward him, stop, look around, and then proceed to kneel down and then to lie down on the pallets that were stacked two high and extended across the deck from the ship's rail to the hatch coaming. The plaintiff then began to scream and, when Stahl approached him, claimed unsafe passage. The Shipowner offered evidence that there was no oil or grease on the deck.

The Shipowner contends that the court erred in denying the Shipowner's motion to dismiss at the close of the plaintiff's case and improperly denied the motions for judgment n. o. v. and for a new trial on the ground that plaintiff's testimony was incredible and the accident physically impossible.

■ The appellant's case is arguable, but the simple answer is that there was enough conflicting evidence for the matter to be submitted to the jury and we hold that Judge Ward was right in so doing:

"Whether the motion is one to direct a verdict or to set aside a verdict which the jury has returned, the test applied by the court is the same. The evidence must be viewed in the light most favorable to the party other than the movant. The motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the nonmovant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him. 5 J. Moore, Federal Practice, ¶ 50.; 2 [1] (2d ed.); F. James, Civil Procedure, § 7.11 pp. 277–

278 (1965)." Armstrong v. Commerce Tankers Corp., 423 F.2d 957, 959 (2 Cir.), cert. denied, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

In this instance, plaintiff produced just enough evidence by his own testimony to warrant the District Court's denial of the Shipowner's motions in spite of strong evidence by the Shipowner that the accident is not likely to have happened the way the plaintiff described it.

■■ The more difficult question facing us on this appeal is whether or not the special verdicts rendered by the jury pursuant to Rule 49(a) can be made consistent with one another. The Supreme Court has said that the Seventh Amendment requires a court to adopt that view of a case under which a jury's special verdicts may be seen as consistent. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).[1] However, when special verdicts cannot be reconciled, or when a jury's answers to interrogatories cannot be reconciled with its verdict, the court may not enter a judgment. Royal Netherlands S.S. Co. v. Strachan Shipping Co., 362 F.2d 691 (5 Cir. 1966), cert. denied, 385 U.S. 1004, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967); Martin v. Gulf States Utilities Co., 344 F.2d 34 (5 Cir. 1965). See Turchio v. D/S A/S Den Norske Africa, 509 F.2d 101 (2 Cir. 1974). If judgment has been entered inappropriately, the proper appellate remedy is to remand for a new trial. Turchio, supra, at 106.

Where a finding of unseaworthiness will make a finding of negligence unnecessary, the special verdict is a good device. See John R. Brown, Federal Special Verdicts, 44 F.R.D. 338 (1967). And, of course, when liability follows from a holding of unseaworthiness as a matter of law, "the exculpatory finding of no negligence becomes immaterial." See Mills v. Mitsubishi Shipping Company,

---

1. There the jury found both unseaworthiness and negligence on the part of the shipowner, and there was no inconsistency in that regard. The jury also found the stevedore not liable for breach of its contractual warranty.

The majority found one theory on which the shipowner could have been liable for unseaworthiness for which the stevedore would not be responsible.

358 F.2d 609, 614, n. 10 (5 Cir. 1966). It is when the jury finds that the vessel was not unseaworthy but that the shipowner was, nevertheless, guilty of negligence, as here, that the difficulty arises.[2] As this court has noted: "It is hard to imagine, especially on the facts of this case, how an owner could be negligent, if the ship was not unseaworthy." Spano v. Koninklijke Rotterdamsche Lloyd, 472 F.2d 33, 35 n. 1 (2 Cir. 1973).[3]

In this case the trial judge recognized in his charge that a finding of unseaworthiness was a precondition to a finding of negligence.[4] The evidence presented no issue of operative negligence aside from the breach of duty reasonably to provide a safe place to work. The submission of the special verdict form might well have been accompanied by a charge or other direction that, in the circumstances of this case, the jury could not find negligence if they failed to find unseaworthiness.[5]

Recently in Conceicao v. New Jersey Export Marine Carpenters, Inc., 508 F.2d 437 (2 Cir. 1974) cert. denied, —— U.S. ——, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), we were able to reconcile the jury's finding that the Vessel was not unseaworthy with its finding that the accident was caused by the Shipowner's negligence. We relied upon Usner

v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) for the proposition that a single separate act may constitute operative negligence, though it may not necessarily create a condition of unseaworthiness. In Conceicao, the single act was the overloading of a storage bin that itself was sufficiently sturdy to bear a normal load. In Usner, the act was the premature and sudden release of a fall by a winchman, causing the sling to strike a longshoreman. It is true that in Conceicao we went somewhat further than the Supreme Court did in Usner, for in Usner the single act of negligence was performed by a longshoreman and not by a member of the crew, while in Conceicao, the operative negligence was the fault of one of the ship's officers.

In Henry and Braye v. A/S Ocean & John P. Pederson & Sons, 512 F.2d 401 (2 Cir. 1975), a panel of this court, confronted with a similar finding on a special verdict of negligence but no unseaworthiness, was able to reconcile the alleged inconsistency because of the narrow charge on unseaworthiness there given by the trial court, which instructed that the jury could find unseaworthiness only if it found that plaintiff's injuries were caused by defective equipment. The panel held that there was no inconsistency because the jury might have

2. There was a similar verdict in Weyerhaeuser S.S. Co. v. Nocirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), but the verdict in favor of the longshoreman was not appealed. 355 U.S. at 564, 78 S.Ct. 438. That was also true in Drago v. A/S Inger, 305 F.2d 139 (2 Cir.), cert. denied, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962).

3. This comment was elicited by the insistence of counsel in alleging both negligence and unseaworthiness. The longshoreman plaintiff had tripped over a wire lashing barrels of deck cargo to a pad eye near a hatch coaming.

4. The court charged that it was plaintiff's contention that the unseaworthy condition was the condition of the deck "due to one, grease or oil on its surface making it slippery to walk upon and two, blocked and encumbered with tripping hazards."

The court noted that to establish negligence in that the defendant failed in its duty to exercise reasonable care to provide him with a reasonably safe place to work, the plaintiff's contention was simply "that permitting grease and oil to remain on the deck made the deck unsafe for men to walk on and that the ship's officers knew or should have known in the exercise of reasonable care that the deck was unsafe and that they should have removed the grease and oil and provided a walkway past the pallets and their failure to do so was negligence, a violation of defendant's duty to supply Mr. Bernardini with a reasonably safe place in which to work."

5. Effective November 26, 1972, employees such as the appellant here, covered by the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., may no longer bring an action against the vessel or its owner for unseaworthiness. Pub.L. 92–576 § 18.

concluded "that other claims (e. g., failure to reposition the booms properly) could only be resolved on a negligence theory." *Id.* at 405. In the case on appeal we have no single act of operative negligence that could account for the verdict.

 The only negligence with which the Shipowner can be charged here derives from a breach of duty on the part of the First Officer, Stahl. It can be argued that Stahl was under a duty to keep the deck clean and that his knowledge of the slippery condition of the deck was sufficient to impose upon him a duty, with which he failed to comply, either to see that the deck was cleaned or to warn the plaintiff not to traverse that area. Yet the very statement of the breach of duty constituting negligence indicates that it would be a breach of duty for failure to correct or to warn of a *condition*, the condition being a slippery deck. This is a classic illustration of unseaworthiness, independent of negligence. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). To recapitulate, if the deck was not in an unseaworthy condition, then the Shipowner bore no duty to eliminate an unseaworthy condition or to warn the longshoreman plaintiff of the danger. This is the exceptional case where a breach of duty can be constructed only if the deck was in an unseaworthy condition.

For the most part, as Gilmore & Black have pointed out, "unseaworthiness has virtually swallowed up negligence." G. Gilmore & C. Black, Admiralty § 6–55 at 364 (1957). An exception may exist, as this court found in *Conceicao* and in *A/S Ocean, supra,* when an isolated act of operative negligence renders a shipowner liable to an injured plaintiff without rendering his ship unseaworthy. In this case, we can find no single act of negligence which did not of itself create a condition longlasting enough to constitute unseaworthiness.

While special verdicts should be reconciled wherever possible, allowing the jury's right in Judge Weinfeld's words "to an idiosyncratic position," Malm v. United States Lines, 269 F.Supp. 731 (S.D.N.Y.), aff'd on the district court's opinion, 378 F.2d 941 (2 Cir. 1967), and cf. Ianuzzi v. South African Marine Corp., Ltd., 510 F.2d 950 (2 Cir. 1975), there must be a limit where, as here, the special verdicts are quite irreconcilable, the plaintiff's case is tenuous, and the suspicion strong that the judgment was predicated upon confusion or sympathy or both.[6]

Reversed and remanded for a new trial.

---

6. Our reversal on the ground that the jury returned irreconcilable special verdicts makes it unnecessary for us to pass upon the correctness of the trial court's instructions dealing with the applicability of the Health and Safety Regulations for Longshoremen to the issue of the shipowner's liability. Inasmuch as we are remanding for a retrial it is not inappropriate to note that Albanese v. N. V. Nederl. Amerik Stoomv. Maats, 346 F.2d 481 (2 Cir. 1965), rev'd on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1966), remains the law of this circuit.