Nelson M. GOSNELL, Appellee,

v.

SEA–LAND SERVICE, INC., Appellant,

and

Reynolds Leasing Corp., Defendant.

Nelson M. GOSNELL, Appellant,

v.

SEA–LAND SERVICE, INC., and Reynolds Leasing Corp., Appellees.

Nos. 83–1718, 83–1719.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1985.

Decided Jan. 30, 1986.

Randall C. Coleman (Peter J. McNamara, Ober, Kaler, Grimes & Shriver, Washington, D.C., on brief), for appellants/cross-appellees.

David W. Skeen (Stephen F. White, Constable, Alexander & Skeen, Baltimore, Md., on brief), for appellee/cross-appellant.

Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Nelson M. Gosnell, a seaman, brought this action under the Jones Act, 46 U.S.C. § 688 (1982), and under general maritime law to recover damages for injuries he received when he fell forty feet down an unlighted escape hatch aboard the S.S. SEATTLE. Defendants Sea-Land Service, Inc. and Reynolds Leasing Corporation appeal a district court judgment against them, alleging that several jury instructions were incorrect or confusing, and that a special jury verdict finding defendants to be negligent but their vessel not to be unseaworthy was inconsistent. Gosnell cross-appeals a district court ruling that he is not, as a matter of law, entitled to recover $18,651.53 in medical expenses for maintenance and cure paid by his union's medical and hospitalization plan because he did not personally incur such expenses. Having found that the special jury verdicts are not inconsistent, that the jury instructions correctly advised the jury on the applicable law, and that the appellee is not entitled to recover unincurred expenses for maintenance and cure, we affirm.

I

On April 21, 1980, Nelson M. Gosnell secured a temporary job as a relief Third Assistant Engineer for a fourteen-day coastwise trip aboard the S.S. SEATTLE. At the time, Gosnell had been a licensed Third Assistant Engineer for approximately four and one-half years. Gosnell arrived aboard the SEATTLE at about 4:00 p.m. on April 21, having spent the afternoon with a friend, Joe Black, preparing for departure. Black accompanied Gosnell aboard the SEATTLE and remained aboard as Gosnell checked in with the chief mate and settled into his cabin. The ship was scheduled to depart at approximately 6:00 p.m., and Gosnell was to go on duty in the engine room at 8:00 p.m. that evening. Gosnell and Black ate dinner together prior to 6:00 p.m., during which time Gosnell drank a beer, his fourth since 2:30 p.m. that afternoon.

At approximately 6:00 p.m., Black left the SEATTLE. On the way back to his room, Gosnell realized that he had forgotten to ask Black to leave the lights on in his house while he was gone. Gosnell, however, was unable to catch Black on the ship and decided not to follow him off the ship since it was preparing to depart. Gosnell chose instead to proceed to the bow of the SEATTLE on the fo'c'sle head in order to shout instructions to Black.

At that time, the port and starboard passageways on the SEATTLE were different. While the port passageway ran unobstructed to a ladder which led to the fo'c'sle, the starboard passageway had no such ladder. Gosnell testified that he was unaware of the difference and that, assuming he could reach the fo'c'sle either way, he chose the starboard passageway. Gosnell found no ladder on the starboard side and proceeded toward the port side by way of a lateral passage. Part way across this passage, Gosnell saw and entered an escape hatch in the trunk of the vessel, believing he could reach the fo'c'sle by this route. The escape hatch led to a ladder in an interior trunk compartment which extended from a point three deck levels below Gosnell to the fo'c'sle head a level above him. The trunk was unlighted and, in fact, was sealed at the top with no access to the fo'c'sle. Gosnell entered the hatch, stepped on a ladder rung, and reached in the dark for a higher rung that was not there. Gosnell slipped off the ladder and fell forty feet down the escape hatch. There was no claim at trial that the rung had any foreign substance on it or that the ladder itself was in any way defective.

Plaintiff instituted this proceeding on April 15, 1981, alleging a right to recovery based upon the defendants' negligence pursuant to the Jones Act, 46 U.S.C. § 688, and upon the unseaworthiness of the vessel. Both allegations rested on the fact that the escape hatch was unlighted.

At trial, plaintiff called as an expert witness Mr. Preston Harrison, a marine engi-

neer and instructor at the Marine Engineers Beneficial Association school. Mr. Harrison had inspected the SEATTLE on August 9, 1982. He testified that while the lighting in the area leading to the escape hatch trunk was adequate, because of the absence of lighting in the trunk itself, he was unable to determine from looking at it that the trunk was sealed at the top and that the ladder terminated just above the escape hatch. He considered this an unsafe condition. Mr. Harrison also testified that the absence of lighting in the escape hatch was a violation of 46 C.F.R. § 112.-05–15(d) (1979), a shipping regulation requiring emergency lighting in certain areas of a ship.

Defendants' expert, Commander Paul Joseph Pluta of the United States Coast Guard Marine Office in Baltimore, testified that the SEATTLE met all Coast Guard inspection requirements at the time of the accident. In response to questions concerning 46 C.F.R. § 112.05–15(d), Commander Pluta testified that no emergency lighting was required because the escape hatch in this case did not fall within any of the areas specified by the regulation. Before submitting the case to the jury, the trial judge ruled as a matter of law that the regulation did not apply to the trunk in this case. That ruling has not been appealed.

At the end of the trial, the jury returned a verdict accompanied by answers to written interrogatories finding (1) that defendants were negligent under plaintiff's Jones Act claim, and (2) that the vessel, S.S. SEATTLE, was not unseaworthy. The jury also found that Gosnell was contributorily negligent, that his negligence accounted for sixty-eight percent (68%) of his injuries, and that Gosnell had sustained $482,000 in damages. Upon final judgment, the trial judge reduced the damages award to $154,240 in accordance with the verdict.

The district court denied the defendant's alternative motions for judgment n.o.v. or for a new trial on the issues of negligence and unseaworthiness. The defendants appeal the denial of the motions and the entry of judgment for the plaintiff.

In addition, plaintiff cross appeals a trial court ruling that he is not entitled to recover $18,651.53 in medical expenses paid pursuant to his union's medical and hospitalization plan for his maintenance and cure. Sea-Land's collective bargaining agreement with Gosnell's union, the Marine Engineers Beneficial Association (MEBA), provided that all shipowners would be assessed a certain amount to contribute to the MEBA medical fund. Medical expenses of $18,-651.53 were paid out of the MEBA medical fund for Gosnell's maintenance and cure. At trial, the parties agreed to treat the $18,651.53 in issue separately and allow the trial judge to rule as a matter of law whether Gosnell should recover the sum. The court concluded in a final letter ruling that plaintiff could not recover because he did not personally incur any medical expenses or liability.

**II**

Defendants contend that the jury's findings that defendants were negligent and the vessel was not unseaworthy are inconsistent and irreconcilable because both claims arise from the same alleged unsafe condition, the unlighted escape hatch. They argue that since the jury found the escape hatch not to be unseaworthy (and therefore "safe"), the jury could not at the same time find the hatch to be unsafe under the negligence claim.

The standard of review for allegedly inconsistent verdicts is well established. When the use of a special verdict form leads to apparently conflicting jury findings, the court has a duty under the seventh amendment to harmonize the answers, if it is possible to do so under a fair reading of them. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Ladnier v. Murray,* 769 F.2d 195, 198 (4th Cir.1985). The Supreme Court has stated: "We must therefore attempt to reconcile the jury's findings, by exegesis if necessary, ... before we are free to disregard

the jury's verdict and remand the case for a new trial." *Gallick v. B & O Railroad Company,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963). In attempting to reconcile special verdicts, a court should look beyond the face of the interrogatories to the court's instructions. *Alverez v. J. Ray McDermott & Co., Inc.,* 674 F.2d 1037, 1040 (5th Cir.1982); *see also Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973).

In the present case, we need only look to the substantive law encompassed within the district court's instructions to determine that the jury's findings are not inconsistent. Jones Act negligence and unseaworthiness are two separate and distinct claims, *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971), requiring two different standards of proof for causation. The Jones Act, which adopted by reference the lax negligence standard of the Federal Employers' Liability Act, requires only that the defendant's negligence contribute in any way, however slight, in causing the plaintiff's injuries. *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 506–507, 77 S.Ct. 443, 448–449, 1 L.Ed.2d 493 (1957). On the other hand, in order to prove a claim of unseaworthiness, a plaintiff must show that the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries. *See Alverez,* 674 F.2d at 1042; *Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 302 (5th Cir.1984); *Comeaux v. T.L. James & Co., Inc.,* 702 F.2d 1023, 1024 (5th Cir. 1983). *See generally 1B Benedict on Admiralty* § 28, at 3–162 to 166 (7th ed. 1980).

The trial court correctly instructed the jury on the elements of Jones Act negligence and unseaworthiness, including the different standards for causation. The jury found that plaintiff met his causation burden under the Jones Act "producing cause" standard, but not under the more rigorous unseaworthiness proximate or substantial cause standard. Thus, it can be reasoned that the jury found that in spite of Gosnell's own contributory negligence, defendants' failure to illuminate the escape hatch in question contributed in some part, however slight, to Gosnell's injuries under the Jones Act claim. Apparently, however, the jury also found that Gosnell's own negligence was of such a degree that it prevented the same unlighted escape hatch from being the proximate cause of his injuries under the unseaworthiness claim. We can see no inconsistency in these jury findings.

Defendants contend that *Bernardini v. Rederi A/B Saturnus,* 512 F.2d 660 (2d Cir.1975), should control the result in this case. In *Bernardini,* as in the present case, the negligence and unseaworthiness claims arose from the same alleged unsafe condition, in that case a greasy and slippery deck. In response to special interrogatories, the jury found for the plaintiff longshoreman on the negligence claim, but also found the vessel not to be unseaworthy. The Second Circuit ordered a new trial holding that in this "exceptional case where a breach of duty can be constructed only if the deck was in an unseaworthy condition," id. at 664, the finding of negligence but no unseaworthiness was inconsistent. Defendants assert that like the shipowners in *Bernardini,* they can have breached no duty to the plaintiff if the alleged unsafe condition, the unlighted escape hatch, was found not to be unseaworthy.

Defendant's reliance on *Bernardini* is unpersuasive. The plaintiff in *Bernardini* was a longshoreman and not a seaman subject to Jones Act coverage. Thus, the court did not have to apply the different causation standard for Jones Act negligence. Moreover, the *Bernardini* court noted that the trial judge below "recognized in his charge that a finding of unseaworthiness was a precondition to a finding of negligence." Id. at 663. That is quite different from the present case where the trial judge charged the jury that they could find either unseaworthiness, Jones Act negligence, or both under the applicable law. Given this instruction, and given our constitutional mandate to harmonize jury's find-

ings if at all possible, we cannot say that the special verdicts finding the defendants negligent, but the vessel not unseaworthy are inconsistent or irreconcilable. *See, e.g., Kokesh v. American Steamship Co.,* 747 F.2d 1092, 1094 (6th Cir.1984); *Merchant v. Ruhle,* 740 F.2d 86, 90–91 (1st Cir.1984).

### III

Defendants contend that the district court erred in instructing the jury as to safe alternative routes, the inapplicability of the assumption of risk defense, and Jones Act "course of employment." From our examination of the record and consideration of the arguments, both oral and written, we find no reversible error in these instructions. Read as a whole, the instructions fairly and adequately advised the jury with respect to liability under the Jones Act. *Chavis v. Finnlines Ltd. O/Y,* 576 F.2d 1072, 1076 (4th Cir.1978).

### IV

We also find no merit in plaintiff's cross-appeal for $18,651.53 in medical expenses for maintenance and cure paid by his union's medical and hospitalization plan. In order to recover for maintenance and cure, a seaman must offer proof of expenditures made or liability incurred. *Spanos v. The LILY,* 261 F.2d 214, 215 (4th Cir. 1958); *see also 2 M. Norris, Law of Seamen* § 26:35, at 94–96 (4th ed. 1985). In its review of the record, the trial court found that the plaintiff did not personally incur the medical expenses claimed, and thus it withheld relief. We can find no error in this ruling.

AFFIRMED.