Jose **CALO**, Plaintiff–Appellee,

v.

**OCEAN SHIPS, INC.**, Defendant–Appellant.

No. 1570, Docket 94–7915.

United States Court of Appeals, Second Circuit.

Argued April 20, 1995.

Decided June 6, 1995.

Thomas H. Healey, New York City (Mark Healey, of counsel), for appellant.

Mario Biaggi, Jr., New York City, for appellee.

Before: ALTIMARI, JACOBS, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

## Background

Jose Calo was a crewmember aboard the M/V Gus W. Darnell, which was at sea in the Persian Gulf. On May 28, 1988, the first assistant engineer assigned Calo the unenviable task of removing oil sludge from a water tank in the ship's engine room. According to Calo, when he went below deck he found a grease-slickened pool of water, approximately five inches deep, on the floor surrounding the tank. He also noticed that the room was exceptionally warm, which made his job more difficult.

Calo returned to the first assistant engineer to ask for the help of another crewmember. He described the conditions in the engine room, but the officer denied Calo's request for assistance and ordered him back to work immediately. So back he went, sludge-bucket and shovel in-hand, to skim the oil off the top of an open six-foot high water tank. This assignment required Calo to slosh back-and-forth through the deep puddle around the tank, and repeatedly to climb up and down a ladder in the poorly ventilated engine room.

Sometime after Calo began his work, he was interrupted by another crewmember who arrived with a pump to clean the floor. The shipmate soon finished pumping and left, but a residue of oily water apparently remained. In any event, when Calo resumed his labors, he slipped on a ladder rung and fell, seriously injuring his back and right knee.

In July 1990, Calo brought a suit for damages against the shipowner, Ocean Ships, Inc. ("OSI"), in the United States District Court for the Eastern District of New York. He asserted a negligence claim under the Jones Act, see 46 U.S.C.App. § 688, a claim for unseaworthiness, and a claim for maintenance and cure. After a four-day trial, over which Magistrate Judge Marilyn Dolan Go presided, the jury exonerated OSI from Calo's claim that its vessel was unseaworthy. The jury, however, found in Calo's favor with respect to the Jones Act and cure claims. It determined that OSI was negligent and awarded Calo: $100,000 for past pain and

suffering; $225,000 for future pain and suffering; $46,113.25 for past lost earnings; $40,990 for future lost earnings; $31,041.64 for past medical expenses; and $18,000 for future medical expenses. The jury also awarded Calo $31,000 for cure—for a total verdict of $492,145.39. By stipulation, the parties discounted the jury's estimate of future damages to their present value, bringing the final award to $431,766.48.

OSI subsequently moved in the district court for a judgment as a matter of law or, in the alternative, for a new trial. *See* Fed. R.Civ.P. 50(b) and 59. On August 30, 1994, Magistrate Judge Go issued a memorandum and order denying OSI's motion, and entered judgment for Calo. OSI has appealed from this disposition. For the reasons stated below, we now affirm the district court's entry of judgment for Calo on his Jones Act claim, but reverse and vacate the jury's $31,000 award for cure.

## Discussion

On appeal, OSI contends that the jury's verdict is irreconcilably inconsistent as a matter of law, that the district court made a number of unfair procedural and evidentiary rulings in Calo's favor, and that the jury's award was excessive. We shall address each argument in turn.

First, OSI asserts that there is no way to reconcile the jury's finding of negligence with the jury's determination that the M/V Gus W. Darnell was, in fact, seaworthy, since both claims "turn[ ] on the *existence of unreasonable oil*" on the engine room floor. Brief for Appellant at 46. In support of this position, OSI relies principally upon our decision in *Bernardini v. Rederi A/B Saturnus,* 512 F.2d 660 (2d Cir.1975), which reiterated this court's prior observation that " '[i]t is hard to imagine ... how an owner could be negligent, if the ship was not unseaworthy.' " *Id.* at 663 (quoting *Spano v. Koninklijke Rotterdamsche Lloyd,* 472 F.2d 33, 35 n. 1 (2d Cir.1973)). OSI's characterization of Calo's negligence theory, however, is unduly cramped, and its reliance upon *Bernardini* is misplaced.

"In evaluating a claim that a jury's answers to special interrogatories are inconsistent, a reviewing court must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Brooks v. Brattleboro Memorial Hosp.,* 958 F.2d 525, 529 (2d Cir.1992) (internal quotation marks omitted). The record evidence in this case supports a finding of "operative negligence," apart from general unseaworthiness, that we explicitly recognized was absent in *Bernardini. See* 512 F.2d at 663 ("The evidence presented no issue of operative negligence aside from the breach of duty reasonably to provide a safe place to work."). We have described "operative negligence" as a "single act of negligence which [does] not of itself create a condition longlasting enough to constitute unseaworthiness." *Id.* at 664. Thus, for example, in a case conceptually akin to the present one, we reconciled the jury's findings of negligence and seaworthiness where the negligent conduct entailed a discrete act of overloading a storage bin that was otherwise sufficiently sturdy to hold its intended cargo. *See Conceicao v. New Jersey Export Marine Carpenters, Inc.,* 508 F.2d 437, 442 (2d Cir.1974), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975).

Here, Magistrate Judge Go charged the jury that:

A claim of unseaworthiness differs from a claim of negligence in that if you find that the plaintiff has shown the existence of an unseaworthy condition causing his injury, the plaintiff does not need to show that the condition came about as the result of the negligence of the defendant. On the other hand, *if you find that the accident was the result of a single, isolated act of negligence and not unsafe or unseaworthy condition, you may not make a finding of unseaworthiness but only of negligence.*

Joint Appendix at A71 (emphasis added).

Considering all the evidence in this record regarding the pool of oily water around the tank, the extremely warm temperature in the engine room, and the fact that Calo both notified his superior of these conditions and expressly asked for help, the jury could have reasonably found that the officer's direction to Calo to continue his work without assis-

tance constituted a discrete act of operative negligence. We therefore conclude that, contrary to OSI's argument, the Jones Act verdict neither necessarily nor solely turned on the "existence of unreasonable oil" on the engine room floor—a finding that would have been inconsistent with the jury's determination that the vessel was seaworthy.

Of OSI's various complaints regarding several of the district court's evidentiary rulings, the only one of any substance relates to the restrictions that Magistrate Judge Go placed on the proffered testimony of Edward McNelly—the ship's former Chief Engineer. As it stated on its witness list, OSI wanted McNelly to testify as to the ordinary condition and maintenance of the engine room, as well as to contents of an accident report that he prepared a day after Calo's injury. When OSI sought to call McNelly as a witness, Calo objected and sought to have his testimony precluded on the grounds that OSI did not produce McNelly for a pre-trial deposition as allegedly required by the pre-trial order.

The district court held a hearing outside of the jury's presence to resolve this dispute, ordered that Calo have the opportunity to depose McNelly before the trial reconvened, and ultimately restricted the scope of McNelly's testimony to the contents of the accident report. In the end, OSI never called McNelly. Nevertheless, OSI now complains that the district court's ruling, limiting the scope of McNelly's testimony, severely prejudiced its case and was therefore an abuse of discretion. We are not persuaded.

■ To begin with, because McNelly was neither an eyewitness to, nor a participant in, the events that led to Calo's injury, the bulk of his proffered testimony related merely to the "ordinary routine in the engine room," and to its "ordinary use and regular maintenance and condition." Joint Civil Pre–Trial Order, Joint Appendix at A17. Although we agree that such generalized testimony would have been relevant evidence, we note that it would have only gone to rebut Calo's claim that the vessel was maintained in an unseaworthy condition. But the jury rejected Calo's unseaworthiness claim. It follows that any error on the district court's part in pre-

cluding this aspect of McNelly's testimony was harmless. *See Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 787 (2d Cir.1992); *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 620 (2d Cir.1991); *Schneider v. Revici,* 817 F.2d 987, 991 (2d Cir.1987).

■ Furthermore, OSI did call an expert witness at trial whose testimony covered every area of inquiry that the district court precluded McNelly from discussing. To the extent that such testimony might have touched upon one of the factors relating to the issue of operative negligence, McNelly's would-be contribution to the record was arguably cumulative. "Thus viewed, the [district court's] ruling was not an abuse of discretion." *Healey,* 947 F.2d at 620; *cf. Meriwether v. Coughlin,* 879 F.2d 1037, 1049 (2d Cir.1989) (where court excluded direct evidence of plaintiff-witness' convictions, but admitted prison records that listed those convictions, any error committed was harmless). We therefore conclude that the district court's limitations on McNelly's testimony do not warrant a reversal.

■ Finally, we come to OSI's claim that Calo's monetary award was excessive. We can readily reject OSI's contention that the damages provided by the jury in connection with its finding of a Jones Act violation were ill-founded. There is ample evidence in the record to support the verdict as it relates to both past and future pain and suffering, lost wages and medical expenses.

■ The jury's $31,000 award for cure, however, is another matter. The ancient right to "cure" in maritime law represents a shipowner's obligation to provide medical care to seamen who fall ill or become injured while they are in service to a vessel. This obligation attaches regardless of fault, provided that a sailor's malady is not the result of his or her own gross misconduct. *See* 1B Aileen Jenner, *Benedict on Admiralty* § 42 (7th ed. 1994) [hereafter *Benedict on Admiralty* ]. Furthermore, the right to cure "continues until the seaman fully recovers," *Rodriguez Alvarez v. Bahama Cruise Line, Inc.,* 898 F.2d 312, 315 (2d Cir.1990), or, in other words, only "until he [is] so far cured as possible." *Farrell v. United States,* 336 U.S.

511, 518, 69 S.Ct. 707, 711, 93 L.Ed. 850 (1949).

 OSI argues, and the record demonstrates, that the jury's cure award was premised upon cost estimates for possible, future back and knee surgeries. The evidence indicates, moreover, that at this time, such surgeries would be of uncertain value to Calo. Indeed, in his closing arguments to the jury, Calo's attorney framed his client's request for cure solely in terms of these speculative surgeries. He stated: "You have to give him 10,000 for the [knee] operation. I submit to you based upon Dr. Friedman's testimony you have to give him an additional 30,000 for the back operation." Finally, and it would by itself be dispositive, Calo has never asserted that he will actually undergo either procedure and there is evidence in the record to suggest that he has chosen not to pursue them for reasons other than lack of funds.

In *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), the Supreme Court disapproved of lump sum awards "in anticipation of the continuing need of maintenance and cure for life or an indefinite period." *Id.* at 530, 58 S.Ct. at 654. The Court went on to explain:

> The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained.

*Id.* at 531–32, 58 S.Ct. at 654–55.

In our view, the evidence in this case supporting the jury's $31,000 award is far too speculative to say that the need for such cure has been "definitely ascertained." Accordingly, we vacate that portion of the judgment.[1]

 In reaching this result, however, we expressly note that Calo is not precluded from pursuing additional cure in the future. Should these injuries lead him to undergo

---

1. Because we vacate the jury's cure award, we need not address OSI's claim that the district court abused its discretion by allegedly amending

further medical or surgical treatment, of a kind that is not simply palliative in nature, he may institute another action against OSI to recover the costs of such care. *See Farrell,* 336 U.S. at 519, 69 S.Ct. at 711 (noting that the defendant did "not contend that if Farrell receives future treatment of a curative nature he may not recover in a new proceeding the amount expended for such treatment and for maintenance while receiving it"); *Calmar,* 303 U.S. at 532, 58 S.Ct. at 655 (reversing lump sum cure award "without prejudice to any later suit by respondent to recover maintenance and cure to which he may then be entitled);" *see also Pelotto v. L & N Towing Co.,* 604 F.2d 396, 401–02 (5th Cir. 1979); *Sobosle v. United States Steel Corp.,* 359 F.2d 7, 11 (3d Cir.1966); *Benedict on Admiralty* § 48, at 4–34. But any such action must await another time and facts not in the record before us now.

**Conclusion**

For the reasons stated, we vacate the jury's $31,000 cure award, and affirm the judgment of the district court in all other respects.

the pre-trial order and thereby allowing Calo to seek cure at trial.