Greta MAGNUSSEN, Plaintiff–Appellant,

v.

YAK, INC., a Washington corporation,
Defendant–Appellee.

No. 94–35796.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 20, 1995.

Decided Jan. 3, 1996.

Corrie J. Yackulic and Jeffery P. Robinson, Schroeter, Goldmark & Bender, Seattle, Washington; Arthur C. Johnson, Johnson, Clifton, Larson & Corson, Eugene, Oregon, for plaintiff-appellant.

Michael A. Barcott and Alec W. Brindle, Jr., Faulkner, Banfield, Doogan & Holmes, Seattle, Washington, for defendant-appellee.

Before: REINHARDT, TROTT, Circuit Judges, and SCHWARZER, District Judge.*

SCHWARZER, Senior District Judge:

Plaintiff sued her former employer, YAK, Inc., for personal injuries under the Jones Act, 46 App.U.S.C. § 688, and the maritime doctrine of unseaworthiness. The jury returned verdicts for plaintiff on the negligence claim and for defendant on the unseaworthiness claim. The district court denied defendant's motion for judgment as a matter of law but granted its motion for a new trial on the ground that the jury's verdicts were inconsistent. At the new trial, the jury returned a verdict for defendant. We have jurisdiction of plaintiff's appeal under 28 U.S.C. § 1291.

## FACTS

While carrying a pot to the stove in the galley of defendant's fish processing vessel,

---

* The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

the YARDARM KNOT, plaintiff slipped and fell. Hitting the edge of the stove, she sustained severe injuries. Adjacent to the stove were a deep-fat fryer, an oven, and a hot plate. Plaintiff testified that she slipped on a spot of water, oil, water overlying oil, or something else. A coworker observed two spots of oil under the edge of the stove.

Plaintiff was an experienced chef in commercial kitchens ashore and afloat. A few months before her fall, she had been hired as the head chef of the YARDARM KNOT where she supervised the galley crew, helping with and overseeing preparation of the meals, ordering food and supplies, and maintaining galley cleanliness. She was responsible for serving about 600 meals a day for the 175 persons working on board.

Shortly after plaintiff came to work, she became concerned about the cleanliness and safety of the galley's terrazzo floor. She requested the vessel's supply contractor to provide rubber floor mats. She renewed her request several times, at least once in writing, but no mats were provided.

Substantial evidence was offered at trial showing that it was ship practice not to turn down requests from the head chef for safety equipment and that, according to at least one ship supervisor, it was "wrong" for the vessel to fail to respond to plaintiff's request. In its brief on appeal, defendant "concedes that it may have been negligent in one or both ways, or some other way in not supplying the mats requested by Ms. Magnussen."

## DISCUSSION

■ We review a district court's order granting a motion for a new trial for abuse of discretion. *Rinehart v. Wedge*, 943 F.2d 1158, 1159 (9th Cir.1991). In reviewing jury verdicts alleged to be inconsistent, we "must uphold [them] unless it is impossible 'under a fair reading' to harmonize the answers." *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir.1987).

In determining that the verdicts were inconsistent, the district judge reasoned that plaintiff's claim arose not from "an isolated act of operational negligence" but from "a condition—in this case, that of the galley floor." It relied on *Bernardini v. Rederi A/B Saturnus*, 512 F.2d 660 (2d Cir.1975), in which the court held that "if the deck was not in an unseaworthy condition, then the Shipowner bore no duty to eliminate an unseaworthy condition or to warn the longshoreman plaintiff of the danger. This is the exceptional case where a breach of duty can be constructed only if the deck was in an unseaworthy condition." *Id.* at 664. With respect to the case before her, the district judge said:

As the evidence showed, ... unless oil was present, the coefficient of friction of the galley floor without mats was nearly the same as it would have been with mats. Thus, unless the jury found oil on the floor, Yak could not have been negligent. If oil was on the floor, then the floor was unfit for its intended purpose. In other words, the floor was unseaworthy.

The court also acknowledged that the First, Fifth, and Sixth Circuits seemed to have reached different conclusions in comparable situations, but concluded that "it is clear that the *Bernardini* court more thoroughly analyzed the issue and reached the correct result."

■ Defendant's theory, evidently accepted by the court, is that it cannot be held liable for the negligent failure to furnish mats unless the jury could find that the absence of mats made a difference. Its argument rests on the following logic:

● the evidence showed that the absence of mats on the floor made a difference only if there was oil on the floor;

● if the jury had found that there had been oil on the floor, the deck would have been unseaworthy;

● since the jury found against plaintiff on unseaworthiness, it necessarily found that there was no oil on the floor;

● therefore, it could not have found that absence of mats caused plaintiff's slip.

This logic is faulty because it overlooks the existence of critical evidence which would permit a jury to impose liability on a negligence theory regardless of whether it found unseaworthiness. Specifically, the district court's reasoning ignores testimony support-

ing a finding that the mats would have made a difference, however small, in preventing a fall regardless of the condition of the floor.

The trial court, without objection, gave the following relevant instruction to the jury:

The plaintiff ... is asserting two separate claims against the defendant in this case.

The plaintiff's first claim, under a federal law known as the Jones Act, is that her employer, YAK, Inc., was negligent, and that YAK's negligence was a cause of her injuries. The plaintiff's second claim is that unseaworthiness of the YARDARM KNOT caused her injury.

You must consider each of these claims separately. The plaintiff is not required to prove both of these claims. She may recover if she proves one of them. However, she may only recover those damages or benefits that the law provides for the claim or claims that she proves; she may not receive the same damages or benefits more than once.

The court then explained the respective standards for unseaworthiness and negligence. With respect to unseaworthiness, it instructed in relevant part:

A seaworthy vessel is one that is reasonably fit for its intended use. The duty to provide a seaworthy vessel is absolute.... Liability for an unseaworthy condition does not in any way depend upon negligent or fault.... If an owner does not provide a seaworthy vessel—a vessel that is reasonably fit for its intended use—no amount of care or prudence excuses the owner.

However, the owner of a vessel is not required to furnish an accident free ship. He need only furnish a vessel ... that [is] reasonably fit for [its] intended use.

With respect to negligence, the court instructed in relevant part:

Negligence is the ... failure to do something that a reasonably prudent person would do, under like circumstances....

Negligence is a legal cause of an injury or damage if it played any part, no matter how small, in bringing about the injury or damage....

There was substantial evidence on the basis of which the jury could find that the failure to furnish the mats was negligent, and defendant has conceded this point. Specifically, at least one ship supervisor testified that it was "wrong" not to fill plaintiff's request and that requests by the head chef for safety equipment were not, as a matter of practice, to be turned down. In addition, there was evidence that the failure to furnish the mats was a legal cause of plaintiff's injury, regardless of the condition of the ship's floor. Plaintiff's expert Gary Ingersoll testified that one safety feature of a floor mat is that "it provides for the mechanical locking up of the shoe to the ridges of floor mat." Analogizing a mat to grooves in highways, he stated that it "adds to the slip resistant character of the walking surface." This testimony is sufficient to permit a jury to find that defendant's failure to provide mats was a legal cause of plaintiff's fall, irrespective of the jury's finding as to the condition of the ship's floor.

The trial court, in denying the motion for judgment as a matter of law, has of course determined that the evidence was sufficient to sustain both the negligence and causation findings of the jury. The above testimony alone specifically disposes of defendant's contention that in the absence of the slippery substance on the floor that would make the vessel unseaworthy, there could be no legal causation to support liability for negligence. It is sufficient to permit the jury to find that the failure to provide floor mats increased the risk of a slip and thus, as the court instructed, "played [a] part, no matter how small, in bringing about the injury."

Defendant's reliance on *Bernardini* is misplaced. There plaintiff claimed that he had slipped on oil or grease on the vessel's deck. The trial court instructed the jury in substance that defendant's negligence consisted of failing to furnish plaintiff with a reasonably safe place to work by permitting grease and oil to remain on the deck. The court of appeals' analysis of the charge was as follows:

In this case the trial judge recognized ... that a finding of unseaworthiness was a precondition to a finding of negligence.

The evidence presented no issue of operative negligence aside from the breach of duty reasonably to provide a safe place to work.

512 F.2d at 663 (footnote omitted). The court went on to explain that while the shipowner could be charged with negligence on the basis of the First Officer's breach of duty to keep the deck clean, that breach of duty amounts to a failure to correct a condition, which represents a "classic illustration of unseaworthiness, independent of negligence":

[I]f the deck was not in an unseaworthy condition, then the Shipowner bore no duty to eliminate an unseaworthy condition.... This is the exceptional case where a breach of duty can be constructed only if the deck was in an unseaworthy condition....

In this case, we can find no single act of negligence which did not of itself create a condition longlasting enough to constitute unseaworthiness.

Id. at 664.

While the instant case might perhaps have been presented on a similar theory, it was not. The case was submitted to the jury on instructions that permitted it to find for plaintiff on negligence independently of unseaworthiness. As plaintiff argues, the evidence establishes an act—more precisely, an omission to furnish mats—which is sufficient to support a finding of negligence and causation independent of a finding that the vessel was in an unseaworthy condition.

On this state of facts, even the Second Circuit would not apply the Bernardini rationale. In Calo v. Ocean Ships, Inc., 57 F.3d 159 (2d Cir.1995), decided subsequent to the district court's ruling, plaintiff Calo had been assigned to remove oil sludge from the engine room. When he found a grease-slicked pool of water on the floor and exceptionally warm temperature in the engine room, Calo asked the engineer for another crew member to help him. A crew member came with a pump but left while a residue of oily water still remained, which caused the plaintiff to slip on the ladder rung and fall. The jury found for plaintiff on the negligence claim and for defendant on the unseaworthiness claim. Defendant argued that the verdicts were irreconcilable because the negligence

finding " 'turn[ed] on the *existence of unreasonable oil* ' on the engine room floor." *Id.* at 161 (emphasis in original) (quoting brief of defendant/appellant). The court rejected the argument, distinguishing *Bernardini,* and said:

Considering all the evidence in this record regarding the pool of oily water around the tank, the extremely warm temperature in the engine room, and the fact that Calo both notified his superior of these conditions and expressly asked for help, the jury could have reasonably found that the officer's direction to Calo to continue his work without assistance constituted a discrete act of operative negligence. We therefore conclude that ... the Jones Act verdict neither necessarily nor solely turned on the "existence of unreasonable oil" on the engine room floor....

*Id.* at 161–162. By the same token, the jury here could have found defendant's noncompliance with plaintiff's requests for floor mats to be a discrete act of operative negligence.

Other circuits have rejected the reasoning of *Bernardini.* For example, in *Kokesh v. American S.S. Co.,* 747 F.2d 1092 (6th Cir. 1984), where the jury, after having been instructed that negligence and unseaworthiness are separate claims to be decided separately, returned verdicts for plaintiff on negligence and for defendant on unseaworthiness, the court held that the verdicts were not inconsistent:

A failure to exercise ordinary care may or may not result in an unfit vessel. The jury could have concluded from the proof that although the defendant did not exercise ordinary care in allowing the deck to be made slippery by overflow from the vessel's ballast tanks, the flooding of the deck did not make the vessel unseaworthy.

*Id.* at 1094. *Kokesh* was followed in *Brunner v. Maritime Overseas Corp.,* 779 F.2d 296 (5th Cir.1986), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986), where the jury, under similar instructions, found for plaintiff on negligence and for defendant on unseaworthiness. Though the sole basis for plaintiff's claim was the presence of oil on the

deck, the court rejected the argument that the verdicts were inconsistent, saying:

> The jury could well have concluded that the shipowner was negligent for allowing oil on the deck of his ship, but that oil on the deck of the ship did not render the vessel unfit to go to sea.

*Id.* at 299. Similarly, in *Toucet v. Maritime Overseas Corp.,* 991 F.2d 5, 9–10 (1st Cir. 1993), although the defendant had waived his right to appeal by failing to object before the jury was discharged, the court said:

> In any case, there is no inconsistency between the verdicts in this case. [A] single incident of negligence, such as the requirement that a seaman work when he has reported that he was too fatigued to do so, may occur without rendering the ship unseaworthy.

Finally, in *Gosnell v. Sea–Land Service, Inc.,* 782 F.2d 464 (4th Cir.1986), where plaintiff fell down an unlit escape hatch, the court held that findings of negligence and seaworthiness were not inconsistent.

■ There was a time when shipowner's liability for negligence was limited to situations where the negligence resulted in the vessel's unseaworthiness. *See Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 546, 80 S.Ct. 926, 930–31, 4 L.Ed.2d 941 (1960) (referring to *The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903)). As the Court pointed out, however, "with the passage of the Jones Act in 1920, ... Congress effectively obliterated all distinctions between the kinds of negligence for which the shipowner is liable, ... by extending to seamen the remedies made available to railroad workers under the Federal Employer's Liability Act." *Id.* at 546–47, 80 S.Ct. at 931. Just as liability for negligence is not limited to unseaworthiness conditions, so acts of negligence do not necessarily constitute unseaworthiness. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 500, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971). While a plaintiff is free to cast her negligence case in terms of proof of an unseaworthy condition, she is not precluded from recovering for her injuries by proving that they were caused by acts or omissions negligent in themselves.

## CONCLUSION

In *Atlantic & Gulf Stevedores v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962), the Supreme Court declared that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment."

Having no difficulty in viewing the case so as to make the jury's verdict consistent, we reverse the judgment below and direct reinstatement of the original jury verdict for plaintiff, with costs to the appellant. In view of this disposition, we do not reach the evidentiary issues raised by appellant.

REVERSED.