James BARBER, et al., Plaintiffs—Appellees,

v.

COUNTY OF VENTURA, et al., Defendants—Appellants.

No. 01–55309.

D.C. No. CV–98–04414–GAF.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2002.

Decided Aug. 29, 2002.

---

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Before LAY *, CANBY and PAEZ, Circuit Judges.

---

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## MEMORANDUM **

Defendants–Appellants County of Ventura (the "County") and Kathy Jenks (collectively, "Defendants") appeal from a judgment following a jury verdict for Plaintiff–Appellee James Barber and from the district court's order denying their motion for a new trial and motion for judgment as a matter of law. Defendants contend that: (1) the evidence was insufficient to support the jury's special verdict that Barber was subjected to a hostile working environment; (2) the district court admitted irrelevant and prejudicial testimony; (3) the special verdict in favor of Defendants on Plaintiff's § 1981 claim and against them on the § 1983 and Title VII claims were fatally inconsistent; (4) the district court erred in failing to hold a hearing on juror misconduct; and (5) a jury instruction erroneously allowed the jury to award excessive loss of earnings. We affirm.

### 1. Sufficiency of the Evidence

Because substantial evidence supports the jury's verdict on both the § 1983 claim against Jenks and the Title VII claim against the County, we affirm the district court's denial of Defendants' motions for a new trial and for judgment as a matter of law. *See Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,* 199 F.3d 1009, 1011 (9th Cir.1999).

### A. Title VII

■ There was substantial evidence to support the jury's verdict that the County violated Title VII by subjecting Barber to a hostile work environment. The harassment was so "severe or pervasive" as to

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

alter the conditions of Barber's employment and create an "abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

We reject Defendants' argument that Plaintiff's evidence of racial harassment was confined to eight incidents over five to eight years. Barber demonstrated that his co-workers used demeaning and offensive terms about his race, *see Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1030 n. 12 (9th Cir.1998); *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987), and engaged in racially derogatory conduct that continued for a lengthy period of time, from just after he began working in 1991 to shortly before he left his job in 1997. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 799–802 (9th Cir. 2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1609, 152 L.Ed.2d 623 (2002). He also presented evidence that work assignments were unfairly distributed, with a heavier workload and less desirable assignments falling to him. There was evidence before the jury that the County did not provide adequate grievance procedures or redress racially abusive conduct. Considering the evidence in the light most favorable to Plaintiff, the district court did not abuse its discretion in denying Defendants' post-trial motions.

## B. Section 1983

■ To establish his claim against Jenks under § 1983, Barber was required to prove that (1) Jenks acted under color of state law, and (2) Jenks' conduct resulted in the deprivation of Barber's Fourteenth Amendment right to equal protec-

tion of the law. *See Jones v. Williams*, 297 F.3d 930, 932 (9th Cir.2002). There was no dispute that Jenks, as Director of the Department of Animal Regulation, was acting under color of state law at all relevant times. In addition, Jenks personally participated in the racially charged conduct when she said to Barber, "Look at this [lamb]. They can't blame this one on you. This one is white." This statement referenced a longstanding joke within the office about Barber breeding a black lamb. *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc) (describing when a supervisor's personal involvement in the deprivation of constitutional rights creates liability under § 1983).

Moreover, because Jenks acknowledged that she was aware of the ongoing jokes in the Department about the sheep, and does not argue that she was unaware of the racially demeaning conduct towards Barber, there was substantial evidence to support the jury's conclusion that Jenks condoned the behavior of Barber's co-workers. *See Jones*, 297 F.3d 930, 937 n. 5. In sum, there was substantial evidence to support the jury's verdict that Jenks' conduct deprived Barber of the equal protection of the law.

## 2. The District Court's Evidentiary Rulings

The district court did not abuse its discretion in admitting the testimony of Lydia Hulette,[1] Myra Kelly, and Gail Watson. Because they testified to events within their personal knowledge, their testimony did not violate Rule 602 of the Federal Rules of Evidence ("FRE").

---

1. We also reject the argument of County and Jenks that Hulette's statements about retaliation against her by the County were prejudicial because they were heard by the jury. The County and Jenks do not argue that the state-

ments had an improper effect on the jury or explain why the court's subsequent admonishment that the jury disregard the statements was ineffective.

Defendants' argument that these witnesses did not observe Barber's supervisors making racially inappropriate statements to Barber misses the mark. Under Title VII and § 1983, the County may be liable for a supervisor's approval of discrimination or the failure to prevent it, even if they did not personally participate in it. *Swinton*, 270 F.3d at 803 (explaining that under Title VII, if the harasser is a co-worker, "the plaintiff must prove that the employer was negligent, i.e. that the employer knew or should have known of the harassment but did not take adequate steps to address it"); *Jones*, 286 F.3d 1159, 1166 (under § 1983, the jury may determine whether supervisor knew about the conduct but failed to stop it).

We also reject as unpersuasive Defendants' challenge on the basis of FRE 402 to the testimony of three Department employees about a "clique" of employees at the shelter, and to an African American customer's testimony about discourteous treatment she received as well as her observations of demeaning treatment of Barber at the shelter. There was testimony that the term "clique" referred to a division within the Department between an "in" group and an "out" group. This testimony was relevant to Barber's claims of discrimination which were based, in part, on an alleged division within the Department where the "in" group acted in a racially derogatory way toward him as a member of the "out" group. The customer's testimony is relevant because it shows how the Department treated Barber and other members of his race. That the customer was not an employee does not bar her testimony.

Finally, we reject the County's objection to Gary Piehl's testimony about unresolved grievances that he had presented to the County Board of Supervisors. This testimony is relevant to the County's defense that Barber failed to exhaust the Department's grievance procedures. If, as Piehl testified, the Department's grievance procedures were ineffective, then those procedures cannot bar Barber's claim of discrimination because it would have been useless for him to exhaust them. *Faragher*, 524 U.S. at 808–09 (holding that an ineffective grievance procedure bars employer's defense based on that procedure); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 877 (9th Cir.2001) (rejecting defense that employee did not take advantage of grievance procedures because employer did not exercise reasonable care to promptly correct harassing behavior).

### 3. The Verdicts were not Inconsistent

The district court correctly ruled that the verdicts were not inconsistent because it is possible to harmonize the § 1981 and Title VII verdicts and the § 1981 and § 1983 verdicts. Defendants argument is not compelling that the jury's verdict in their favor on Barber's § 1981 claim is inconsistent with its verdicts against Jenks on the § 1983 claim and against the County on the Title VII claim. *See Magnussen v. YAK, Inc.*, 73 F.3d 245, 246 (9th Cir.1996); *Ways v. City of Lincoln*, 871 F.2d 750, 756 (8th Cir.1989) (harmonizing a § 1983 jury verdict and the holding in a Title VII court trial); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999) (harmonizing § 1981 and Title VII verdicts).

First, the district court fairly harmonized the § 1981 and Title VII verdicts. The jury reasonably could have found the County liable under Title VII for the failure by County officials other than Jenks to address racial harassment in the workplace without finding that Jenks, as an individual, intentionally discriminated against Barber in violation of § 1981.

In addition, unlike Title VII, supervisor liability under § 1981 cannot be premised on respondeat superior. Barber had to show that the violation was caused by a custom or policy of the County. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733–36, 738–39, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Thus, the jury reasonably could have found the County liable under Title VII based on a respondeat superior theory, while also finding insufficient evidence to conclude that the County had a custom or policy of discrimination in violation of § 1981.

■ With regard to the allegedly irreconcilable verdicts for Jenks on the § 1981 claim and against her on the § 1983 claim, the district court's reasoning is sound that the jury could have interpreted the § 1981 claim to center on discriminatory punishment of Barber. Thus, the jury reasonably could have found that Jenks violated Barber's Fourteenth Amendment equal protection rights in violation of § 1983 by participating in discriminatory conduct, but did not violate § 1981 by punishing Barber in a discriminatory way.

**D. Juror Misconduct**

■ The district court properly denied Defendants' request for a hearing to determine whether there was juror misconduct. The district court assessed the impact of the hepatis C discussion and concluded that the likelihood of prejudice was slight because there was no evidence that the cost of treating hepatitis C was discussed or that it played any part in the jury's damages award. Because the panel must "accord substantial weight to the district court's conclusion as to the effect of the misconduct," *United States v. LaFleur,* 971 F.2d 200, 206 (9th Cir.1991) (internal citations omitted), and an evidentiary hearing is not mandated for every allegation of misconduct or bias, *United States v. Angu-*

*lo,* 4 F.3d 843, 847 (9th Cir.1993), we affirm the district court's determination.

**5. Jury Instruction Regarding Damages**

■ The district court did not abuse its discretion by instructing the jury to award back pay beyond November 1997 if it found that Barber left his position due to discrimination. *See Monroe v. City of Phoenix,* 248 F.3d 851, 857 (9th Cir.2001). County and Jenks argue that Barber did not leave his position because of racial discrimination, and therefore the instruction should have restricted recovery for compensatory damages to November 1997, when Barber stopped working for the County. The district court properly instructed the jury that if they believed Barber's claim that his departure was due to discrimination, they should award back pay beyond November 1997 and until September 1999 when Barber became unable to mitigate his damages.

AFFIRMED.