MCI TELECOMMUNICATIONS CORPO-
RATION, Plaintiff–Appellee,

v.

Boyd WANZER, Defendant–Appellant,

and

Kathleen Zampieri, Defendant.

No. 88–1390.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1989.

Decided March 1, 1990.

Rehearing Denied April 16, 1990.

704

William Francis Pendergast (Daniel Marino, Marc S. Gold, Seyfarth, Shaw, Fairweather & Geraldson, on brief), for defendant-appellant.

John Patrick Wintrol (Elliot B. Adler, Robert E. Pokusa, Michelle D. Bernard, Laxalt, Washington, Perito & Dubuc, Washington, D.C., Thomas Rawles Jones, Jr., Cohen, Dunn & Sinclair, Alexandria, Va., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

The plaintiff/appellee MCI Telecommunications Corporation (MCI) is a large corporation with projected revenues of five billion dollars. The defendant/appellant Boyd Wanzer (Wanzer) was its Director of

Corporate Services, and was responsible, in part, for acquiring and contracting for various goods and services for his employer MCI, including the acquisition of moving and storage services. One of the parties with which Wanzer dealt in acquiring leases of warehouse space was H & L, a corporation originally founded by Edward Harrison and Howard Levine. During 1986 and 1987 Wanzer and H & L negotiated certain warehouse leases. These leases were made by Wanzer in private negotiations with representatives of H & L, without securing competitive bids as required by MCI policy. Wanzer was reprimanded for his failure to follow company policy in negotiating privately these leases. MCI began an investigation of the leases because it appeared that the lease payments were considerably out of line. This investigation produced evidence that MCI had been vastly overcharged under the warehouse leases negotiated between Wanzer and H & L and that Wanzer had received very large kickbacks (as much as $12,000 per month in 1986) from H & L in the execution of such leases. Wanzer's services as Director of Corporate Services were terminated by MCI as a result of the investigation and this suit was filed by MCI against Wanzer and certain other defendants.

In its complaint MCI set forth a cause of action against Wanzer (the other alleged conspirators were later dismissed) for conspiracy to defraud MCI and for fraud by Wanzer alone against MCI resulting in great loss to MCI (Counts I and II), for breach of Wanzer's fiduciary duty as an employee of MCI in his dealing with H & L (Count III), and finally for conversion of property of MCI by Wanzer (Count IV). Wanzer answered the complaint with a formal denial, to which he added a counterclaim stating claims (1) that MCI had breached its contract of employment with Wanzer by discharging him, (2) that MCI had breached its implied covenant of good faith and fair dealing by discharging him (Wanzer), and (3) that MCI in its investigation had violated his right of privacy.

Upon MCI's motion for summary judgment, judgment was entered for MCI in connection with counts 1 and 2 of Wanzer's counterclaim. There has been no appeal from that judgment. The third count of the counterclaim (for invasion of Wanzer's right of privacy) was later submitted to the jury, which returned a verdict in favor of MCI. After a jury trial, a verdict was returned in favor of Wanzer on Counts I, II and IV of MCI's complaint, but in favor of MCI on Count III, charging a violation of fiduciary duty by Wanzer, with an award of $1,000,000 by way of damages. Wanzer has appealed.

Wanzer raises four claims of error by the trial court. First, he contends that the trial judge improperly admitted the testimony of MCI's witness Bruso as an expert witness on damages sustained by MCI as a result of Wanzer's breach of fiduciary duty and improperly refused to admit the testimony of his witness Harrison to refute what he declared was the "unsupportable and outrageous estimates of H & L's profits on MCI contracts." His second and third claims of error challenge the district court's failure to grant his motion for JNOV or a new trial in the alternative because the jury verdict was said by him to be fatally inconsistent and because of its failure to grant a new trial or remittitur of the award of damages in favor of MCI as not supported by the evidence. His final charge of error relates to the trial court's dismissal of counts 1 and 2 of his counterclaim on the ground that his employment was at-will. We shall address seriatim these claims of error.

There was no error in the admission of MCI's witness Bruso's testimony as an expert witness on leasehold values and profits. Wanzer concedes that the determination of a witness' qualification to testify as an expert witness is "normally within the discretion of the trial judge" and his determination is only reversible for "clear abuse of discretion." *Martin v. Fleissner, GMBH,* 741 F.2d 61, 64 (4th Cir.1984); *Garrett v. Desa Industries, Inc.,* 705 F.2d 721, 724 (4th Cir.1983); *Bowen v. U.S. Postal Service,* 642 F.2d 79, 83 (4th Cir.), *rev'd on other grounds,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1982). Bruso testified to substantial experience in the field of ware-

house leases. He had operated a real estate business and had engaged in warehouse leasing in and about Landover, Maryland, where the relevant leaseholds were located. More importantly, he had often made calculations of gross profitability of leases of the character similar to those involved in this litigation. Under this showing, the trial judge did not abuse his discretion in permitting Bruso to testify as an expert witness on the profitability of the leases.

■ We find, however, that the district judge erred in refusing to permit Wanzer's witness Harrison to testify in rebuttal of Bruso's testimony. Lillian Harrison had been the bookkeeper for H & L between the summer of 1985 and March 1988, the period covered by Bruso's testimony. Prior to trial she had prepared a calculation of the profits on the contracts between MCI and H & L during that period. This calculation was based on the records of H & L kept and prepared by her in her capacity as bookkeeper for H & L. Her calculations were significantly lower than Bruso's. The district court ruled that her testimony constituted expert testimony. Because Harrison had not been listed pre-trial as a potential expert witness as required, her testimony was found inadmissible.

In ruling Harrison's testimony inadmissible, the district court failed "to distinguish between opinion testimony which may be introduced by lay witnesses and that which requires experts." "The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge [as distinguished from hypothetical facts] and susceptible to specific cross-examination (citing 3 J. Weinstein, Evidence, ¶ 701[02] at 701–9 and 701–17 (1978)). A lay witness in a federal court proceeding is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived."[1] *Teen–Ed, Inc. v. Kimball International, Inc.,* 620

F.2d 399, 403 (3d Cir.1980). In that case, the party's accountant, even though, as here, not identified before trial as an expert witness under Rules 702 and 703, was permitted to testify as a lay witness on the basis of facts and data perceived by him in his capacity as an accountant and bookkeeper and to submit a projection of profits based on such records. That is substantially this case. Harrison was the bookkeeper. She was testifying on the basis of records kept by her personally under her control, and her projection of profits under the lease as prepared by her was predicated on her personal knowledge and perception. As such she was a lay witness, whose identification as an expert witness under Rules 702 and 703 was not required. That was precisely what was held in *Teen–Ed* and we agree. The district judge erred in refusing to permit Harrison to testify.

■ Thus, it was error to exclude Harrison's testimony. Furthermore, this is a material error, and it necessitates a new trial on the issue of damages. Had the jury heard this evidence of lower H & L profits and found it more credible than MCI's evidence, the amount of damages awarded might have been much smaller. However, a new trial of the merits is not warranted. This error does not affect the evidence offered at trial to prove that Wanzer went outside the normal channels and acted improperly in awarding the contracts in question to H & L. It merely goes to the extent of the damage caused to MCI by this action.

■ Wanzer also takes issue with the district court's ruling dismissing the first two counts of his counterclaim on the ground that his employment status was as an employee at-will. He bases this contention upon MCI's policy manual, its stock option plans, and the alleged statements made to him while an employee. The policy manual does address business ethics, annual merit reviews, a probationary period for new hirees, and the firm's discipli-

---

**1.** Rule 701, Fed.R.Evid., provides:

   If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or

inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

nary system. The manual, however, contains express language disclaiming any purpose of creating thereby an employment relationship.[2] It is Wanzer's position that the stock option plans made him an employee dischargeable only for cause. Again, each option issued to Wanzer expressly stated that no employment relationship was established by it.[3] Any statements by his supervisors relating to his employee status went no further than statements that his "future with MCI was promising and stable." No more definite promises were stated by Wanzer in his affidavit filed in opposition to the plaintiff's motion for summary judgment on the first two counts of Wanzer's counterclaim. The district judge held that this showing of Wanzer was insufficient to create an issue of genuine fact whether Wanzer's employment was at-will and that, therefore, MCI was not amenable to suit for discharging Wanzer.

■ The law of the District of Columbia, it is agreed by the parties, governs the determination of the nature of Wanzer's employee relationship. Normally, under District of Columbia law, a contract of employment for an indefinite period creates only an at-will relationship. *Hall v. Ford*, 856 F.2d 255, 267 (D.C.Cir.1988). Except for a few exceptions not relevant here, an at-will employee may be fired at any time for any reason.[4] The policy manual and the stock option plans cannot be said to create any different relationship than an at-will one in view of the express language of both the manual and the stock option plans. To support his claim that his rela-

tionship was other than at-will, Wanzer relies on certain alleged statements made to him, as set forth in his affidavit filed in resisting the motion for summary judgment. There are only two relevant allegations in the affidavit. One is that he was "led to believe" that he would have a "lengthy career" with MCI. However, he cites no promises, only his subjective feelings. The second is that some of his supervisors at MCI assured him that his "future with MCI was promising and stable." Again, this only infers that he was doing a good job and that those around him could not envision a person of that merit being fired. It does not create a factual issue over the status of his employment relationship. The rest of the affidavit stresses reliance on the employee manual. As noted, the manual did not create a fire-only-for-cause relationship. Thus, the granting of summary judgment on these two counts of the counterclaim was proper.

■ We find no merit in Wanzer's claims that the district judge was wrong in denying his motion for JNOV or a new trial in the alternative. His argument is based upon his contention that the verdicts in the case were inconsistent. He urges that the theory underlying the whole complaint is that he received kickbacks, and that the verdicts include conflicting conclusions about whether he received kickbacks. The law is clear on when a verdict is to be set aside for inconsistency. "[T]he court has a duty under the Seventh Amendment to harmonize the answers, if it is possible to do

---

**2.** The employee manual contains the following language:

> The Human Resources policies, practices, programs, and plans of MCI are not intended to create an employment contract or term of employment or to set legal limits upon MCI in its relationship with its employees or the termination of that relationship. These documents or any handbooks or manuals are provided to management and employees for their information so that they may know some of the guidelines which are normally applied by management. However these guidelines may be changed from time to time without notice or may in some circumstances be disregarded by management.

**3.** This was typical of the language contained in the stock option plan agreements between Wanzer and MCI.

> *Employment Status.* The Option does not confer upon Optionee any right with respect to continuance of employment by the Company or by a subsidiary of the Company, nor does it interfere in any manner with any right which Optionee or the Company may otherwise have to terminate the Optionee's employment.

**4.** Obviously, there are certain exceptions to this rule. For example, an employer would not be able to discharge an employee in retaliation for filing a discrimination claim with the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e–3(a) (1981).

so under a fair reading of them," *Gosnell v. Sea–Land Service, Inc.,* 782 F.2d 464, 467 (4th Cir.1986), and only when this is not possible is the verdict to be disturbed. "We must therefore attempt to reconcile the jury's findings, by exegesis if necessary, ... before we are free to disregard the jury's verdict and remand the case for a new trial." *Id.* at 466–67, *quoting Gallick v. B & O Railroad Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963).

■ The district judge clearly explained, in denying Wanzer's motion, why the verdicts for Wanzer on Count I (conspiracy) and Count II (actual fraud) were not inconsistent with the verdict for MCI on Count III (breach of fiduciary duty). Fraud was an element of the conspiracy claim in Count I. The jury could not find fraud without clear and convincing evidence. Thus, the jury could have found that there was a preponderance of proof of a kickback scheme, but not clear and convincing evidence. If so, it would find for MCI on the breach of fiduciary duty count, but not on the fraud and conspiracy counts.

■ Counts III and IV can also be harmonized. Count IV alleged that Wanzer converted property belonging to MCI by taking kickbacks. A verdict for the plaintiff on Count IV would necessitate a jury finding that the kickbacks were the property *of MCI.* The jury could have found that Wanzer took kickbacks, but that the kickback money was *not* the property of MCI *at the time that Wanzer received it.* Thus, there is no inconsistency between the verdicts on Counts III and IV. Hence, the district judge was correct in denying JNOV or a new trial in the alternative on this basis.

Finally, Wanzer argues that the jury's award of one million dollars was clearly excessive and not supported by the evidence, thus requiring a remittitur of damages. Wanzer attacks the denial of remittitur on two grounds: (1) that the trial judge applied the incorrect standard of review of the jury's award, and (2) that the damage award was based upon hearsay evidence that should have been disregarded. The district judge overruled a post-trial motion for remittitur or a new trial that was made on this basis.

■ The standard for granting such relief is set forth in *Gill v. Rollins Protective Services,* 836 F.2d 194, 196 (4th Cir.1987), *quoting Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350, 352–53 (4th Cir.1941):

> On such a motion [for a new trial] it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

*Cf. West v. R.F. & P. Railroad Co.,* 528 F.2d 290, 292 (4th Cir.1975) (the district judge did not abuse his discretion when he reviewed the evidence and "concluded that the jury could properly have returned the verdict that it did").

The district judge satisfied the standard of review. At first glance, the record would seem to indicate that the more stringent standard for JNOV review was applied in assessing the motion for a new trial. The judge stated that he found that there was evidence upon which the jury "could have" based its damage award. Also, he posed a question to Wanzer's counsel as to why the evidence *did not* support the one million dollar verdict. However, this question was obviously a device for probing defense counsel's thoughts on why the damages award was against the clear weight of the evidence. The judge's colloquy with both counsel reflects that he had reviewed the evidence and found that the damage award was reasonable under the evidence. This conclusion was clearly supported by the evidence cited by the court. This satisfies the district judge's standard of review for assessing such a motion. The district judge should not be required to utter a string of magic words in denying a motion for a new trial or remittitur, especially when the ruling is made from the bench and not in a memorandum opinion.

■ Wanzer also argues that the damage award was obviously based upon consideration of certain hearsay testimony.

The district judge had instructed the jury not to consider this testimony if the jury did not find that a conspiracy existed. The jury did not find a conspiracy under Count I.

However, when the judge considered the motion for a new trial, the record indicates that he found sufficient evidence in support of the damage award *aside from* the hearsay testimony:

DEFENSE COUNSEL: Well, Your Honor, I don't know if the court is putting aside Mr. Levine's testimony, which I think we did in our papers [in support of the new trial motion].

THE COURT: Yes. Put that aside.

Thus, the trial court properly disposed of the motion for a new trial.

In summary, the only error committed by the trial court was the exclusion of Lillian Harrison's testimony. That testimony related only to the estimate of damages. As such it necessitates a new trial on damages but will not require a new trial on the issue of breach of fiduciary duties. Hence, this case is remanded for a new trial on damages alone.

AFFIRMED IN PART AND REMANDED IN PART.