**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INTERNATIONAL DATA PRODUCTS
CORPORATION,
<u>Plaintiff-Appellee,</u>

No. 99-1686

v.

DYNAMIC DECISIONS, INCORPORATED,
<u>Defendant-Appellant.</u>

INTERNATIONAL DATA PRODUCTS
CORPORATION,
<u>Plaintiff-Appellant,</u>

No. 99-1803

v.

DYNAMIC DECISIONS, INCORPORATED,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-98-762-A)

Argued: April 6, 2000

Decided: May 9, 2000

Before NIEMEYER, Circuit Judge, Roger J. MINER,
Senior Circuit Judge of the United States Court of Appeals
for the Second Circuit, sitting by designation, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Evan Meyer Slavitt, GADSBY & HANNAH, L.L.P., Washington, D.C., for Appellant. David Andrew Handzo, JENNER & BLOCK, Washington, D.C., for Appellee. **ON BRIEF:** Thomas Willcox Brooke, GADSBY & HANNAH, L.L.P., Washington, D.C., for Appellant. J. Alex Ward, JENNER & BLOCK, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this appeal, Dynamic Decisions, Inc. ("Dynamic") challenges as inadequate its $1,500 jury verdict obtained against International Data Products Corp. ("IDP") for breach of a settlement agreement. Dynamic argues that because the jury found IDP liable under the agreement, it should have awarded $714,000. The $1,500 verdict, it contends, is inconsistent with the jury's findings and with the evidence presented at trial. Because we find it possible to harmonize the jury's award of damages and its answers given on a special verdict form, we affirm.

I

IDP and Dynamic, two computer manufacturers who competed to supply the United States Air Force under the Minority and Small Business Capital Ownership Development Program run by the Small Business Administration ("SBA"), entered into a settlement agreement to resolve Dynamic's court challenge to a contract award that

2

had been made to IDP. Under a two-party settlement agreement dated July 14, 1997, IDP and Dynamic agreed to approach the SBA and the Air Force in an effort to agree to a dual award through a four-party settlement agreement. The two-party settlement agreement provided that IDP pay to Dynamic 1.8% of the first $250 million of gross sales that IDP made under the supply contract with the Air Force. This provision was apparently intended to apportion between the parties the benefits of the Air Force contract during a period in which IDP would make most of the sales under the contract despite the dual award, as Dynamic had yet to gear up to supply the computer equipment called for by the Air Force contract. At the time of the execution of the two-party settlement agreement, IDP had already made $63,171 in sales to the Air Force. The two-party settlement agreement also specified that IDP and Dynamic would join in an emergency motion to be filed with the United States District Court for the District of Columbia -- which had heard Dynamic's challenge of the Air Force contract award to IDP and had enjoined IDP from continuing with performance of the contract -- to modify the court's order to accommodate a four-party dual supply agreement. Finally, the parties agreed that any breach of the July 14 two-party agreement would "constitute a breach of the four-party Settlement Agreement" and would "authorize the non-breaching party to seek all available remedies under either Agreement."

On July 17, 1997, three days after the parties executed the two-party settlement agreement, IDP sent Dynamic a draft joint motion for filing in the D.C. District Court to request a remand for purposes of allowing the SBA and the Air Force to make a dual award. Dynamic, however, refused to join in the motion. Instead, it filed its own motion, seeking to alter or amend the court's judgment to allow an award of the Air Force contract to Dynamic alone. Accordingly, IDP proceeded unilaterally with a motion to alter or amend the district court's judgment to allow the remand for the purpose of making a dual award.

While the motions of the parties were pending before the D.C. District Court, IDP and Dynamic obtained the consent of SBA and the Air Force to a four-party agreement allowing for a dual contract award. The four-party agreement provided that IDP and Dynamic "expressly waive any rights they may have to challenge the [Air

Force] Contracts, the modified award or the eligibility of either of them for the [Air Force] Contracts." The D.C. District Court approved the four-party settlement agreement and dissolved its earlier injunction, which had prohibited the SBA from continuing with the award of the Air Force contract to IDP.

After IDP resumed supplying computers under the Air Force contract, IDP was acquired by Dunn Computer Corp., which was ineligible for participation in the minority-contractors program, thus disqualifying IDP as a supplier under the program. Dynamic then filed another action against the SBA on July 23, 1998, to "[h]old unlawful and set aside" the award of the Air Force contract to IDP. In the meantime, on September 3, 1998, the SBA denied the Air Force's request for a waiver under the minority-contractor program, and IDP appealed that determination, which remained pending during the period relevant to this appeal. As a result of the SBA's denial of a waiver for IDP, Dynamic's July 23, 1998 suit was dismissed without prejudice.

On June 1, 1998, IDP filed this action seeking a declaratory judgment that IDP owed Dynamic nothing under the July 14 two-party settlement agreement. IDP's complaint alleged, inter alia, that Dynamic breached the two-party agreement three days after its execution by filing its own motion seeking the award of the Air Force contract to Dynamic alone. IDP later amended its complaint to allege, in the alternative, that Dynamic breached the two-party agreement a year later in July 1998 by filing the action against the SBA challenging the contract award to IDP. Dynamic filed a counterclaim against IDP for the amount it claimed was due under the two-party agreement based on the total sales IDP had made to the Air Force. At the time of trial, these sales totaled over $36 million.

At the conclusion of the trial, which lasted less than two days, the jury, answering interrogatories on a special verdict form, returned the following verdict in favor of Dynamic:

> (1) Did IDP have an obligation to pay [Dynamic] the 1.8% commission under the July 14, 1997 Settlement Agreement?
>
> Ans: Yes.

4

(2) If you answered "yes," did that obligation terminate when [Dynamic] filed the Complaint in July 1998?

Ans: No.

(3) What amount, if any, does IDP owe [Dynamic]?

Ans: $1,500

During deliberations, the jury made two inquiries of the court. First, the jury asked, "If we get to Question 3, are we at liberty to enter an amount at our discretion up to the total amount of sales and interest? In other words, do we have the option of awarding a lesser amount of total commissions and interest, possibly including zero?" The court explained to the jury that it had the option of awarding any amount of damages. Second, the jury asked whether a material breach of contract nullifies the contract and its obligations from the time it is signed or from the date of the breach. The court explained to the jury that a breach nullifies a contract from the date of the breach.

After the district court denied Dynamic's motion for a new trial on damages, Dynamic filed this appeal. IDP filed a protective cross appeal, arguing that if a new trial is ordered, it should be for both liability and damages.

II

Dynamic contends that the jury's special verdict was internally inconsistent and that in any event it is not supported by the evidence at trial. It argues that the terms of payment under the July 14 two-party agreement were uncontested in that Dynamic was to receive 1.8% of the sales made to the Air Force, the amount of which was uncontested. It argues that if a breach is found, the only amount that the jury could have found, under the uncontested evidence, was $714,000, including interest. Arguing to the contrary, IDP contends that the jury could have found that Dynamic breached the two-party agreement on July 17, 1997, when Dynamic refused to join in the joint motion to seek approval of the four-party agreement, and therefore was entitled to no commissions on sales after July 17. Dynamic maintains, however, that "the jury never found that IDP's obligation

5

to pay ceased to accumulate on July 17, 1997. Instead, the jury found that `IDP [had] an obligation to pay Dynamic the 1.8% commission under the July 14, 1997 Settlement Agreement.'" Dynamic points out additionally that because IDP made no sales during the three-day period between the July 14 contract and the alleged July 17 breach, there was no evidence to support an award of $1,500.

It is well settled that a court may set aside a jury verdict where it is impossible to reconcile the jury's findings. See MCI Telecommunications Corp. v. Wanzer, 897 F.2d 703, 707-08 (4th Cir. 1990). Because, however, the Seventh Amendment commands that the right of jury trial "shall be preserved," a court must attempt to "`harmonize the [jury's] answers, if it is possible to do so under a fair reading of them,' and only when this is not possible is the verdict to be disturbed." MCI Telecommunications, 897 F.2d at 707-08 (quoting Gosnell v. Sea-Land Serv., Inc., 782 F.2d 464, 466 (4th Cir. 1986)). In addition, a court may, in its discretion, order a new trial if the verdict is against the clear weight of the evidence. See TransDulles Ctr., Inc. v. USX Corp., 976 F.2d 219, 227 (4th Cir. 1992). In reviewing a jury verdict that is alleged to be against the clear weight of the evidence, a court will not set aside the verdict unless "the evidence, viewed in the light most favorable to the parties supporting the jury's verdict, is so clear that reasonable persons could reach no other conclusion than that asserted on appeal." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 711 (4th Cir. 1995) (quoting Coates v. Daugherty, 973 F.2d 290, 293 (4th Cir. 1992)).

Applying these principles to the record before us, we readily conclude that the jury's verdict is both internally consistent and supported by the evidence presented to it at trial. While the jury did not award Dynamic a sum equivalent to 1.8% of the $36 million in sales made under the Air Force contract, it could have concluded, consistent with the evidence, that Dynamic was entitled to a lesser amount if Dynamic breached the two-party agreement three days after it was formed by failing to join in a motion requesting that the D.C. District Court remand to the SBA to allow it to make a dual award. If the jury found that Dynamic breached on July 17, 1997, Dynamic would have been entitled to commissions only up to that point in time.

A verdict of $1,500 is substantially consistent with such a finding. Under the agreement, IDP promised to pay Dynamic a sum equal to

6

1.8% of its first $250 million in gross revenues under the Air Force contract. Through Joint Exhibit 42, the jury was given evidence that IDP received gross revenues of $63,171 from the period of May 5 through June 30, 1997, representing the total sales made before July 17, 1997. Based on sales of $63,171, Dynamic would be due $1,137.08 plus interest, for a total that the jury could reasonably have approximated through its $1,500 award to Dynamic.

Dynamic argues that this conclusion is impossible because the obligations under the two-party contract were conditioned on the execution of the four-party agreement, which occurred well after July 17. The language of the two-party agreement, however, does not support this argument. Nowhere does the agreement state that IDP's obligation to pay commission came into existence only upon execution of the four-party agreement. The contract simply provides that "IDP will pay to [Dynamic] . . . 1.8% of the first $250 million of gross sales it makes under the [Air Force] contract." (Emphasis added). An interpretation that the payments were unconditional is reinforced by the fact that another obligation under the two-party agreement was expressly conditioned on the approval of the four-party agreement. Reading the two-party agreement as conditioning the obligation to pay 1.8% on approval of the four-party agreement would render nugatory the specific conditioning language in the other portion of the agreement applicable to a different obligation.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

7