UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                    No. 02-4250

ROBERT BROWN,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-01-459)

Argued: January 24, 2003

Decided: April 21, 2003

Before WILKINSON, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Douglas Adrien Steinberg, LAW OFFICE OF GWENA KAY TIBBITS, Alexandria, Virginia, for Appellant. Richard D. Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Dean Lanter, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

A grand jury indicted Robert Brown for possessing a forged visa in violation of 18 U.S.C. § 1546(a). The district court ordered a mistrial after the jury deadlocked. Shortly thereafter, one juror contacted a government case agent to discuss the trial and jury deliberations. The government disclosed this information to the district court, and Brown filed motions for sanctions alleging, *inter alia*, that the juror contact violated Local Rule 83.5. The district court denied the motion for sanctions. During retrial, Brown objected to testimony of one lay witness and one expert witness. The district court overruled both objections. The second jury found Brown guilty. Brown now appeals the district court's rulings on the juror contact issue and the admission of lay and expert witness testimony. For the reasons that follow, we affirm the district court.

## I.

Robert Brown, a native of Ghana, Africa, was arrested by Immigration and Naturalization Service ("INS") inspectors on November 17, 2001, at Washington Dulles International Airport ("Dulles"). INS Inspector Paul Trump arrested Brown after looking at his visa and determining that it was fraudulent. Inspector Trump based his conclusion on the fact that there was "a strong odor emanating from the visa, . . . that the security codes on the visa appeared to be incorrect, . . . and that one of the visa's security features normally invisible to the naked eye was clearly visible." On December 13, 2001, a grand jury indicted Brown for knowingly and unlawfully using and possessing a visa, knowing it to be forged, counterfeited, altered, or falsely made, in violation of 18 U.S.C. § 1546(a) (2000). A jury trial was held on February 13, 2002. The jury deadlocked, and the district judge declared a mistrial. On February 15, 2002, Brown filed a motion requesting discovery and bond pending retrial.

On February 18, 2002, a man entered Inspector Trump's office at Dulles, introduced himself as a juror from Brown's first trial, and explained the jury's division of eleven-to-one in favor of conviction. The juror spoke with Inspector Trump for no more than five minutes, during which time Inspector Trump nodded at the juror and smiled, periodically responding to him. The government disclosed the contact to the district court on February 19, 2002, the same day it filed its response to Brown's February 15th motions. Also on that date, the government indicated to the court its intent to retry the case.

The district court held a hearing, *sua sponte*, to review the evidence of the government's contact with the former juror. The court found that Inspector Trump did not engage in improper conduct and the government did not violate Local Rule 83.5. Brown then filed a motion for sanctions, which included a request to dismiss, with prejudice, the indictment against him, because the government had allegedly used the information gained from the conversation between the juror and Inspector Trump to improperly influence the district court. The court denied Brown's motion for sanctions insofar as it was based on the juror contact,* and a second jury trial was held on February 28, 2002.

During retrial, the government called expert witness Christopher Misciagno to testify about the application procedures for obtaining a visa from the U.S. Embassy in Accra, Ghana between April and December 2001, and to testify about the types of visa fraud that took place in Accra during 2001. Misciagno testified that the records in the State Department visa applicant database and the characteristics of the altered visa were consistent with the type of visa fraud prevalent in Ghana in 2001. Brown objected to this testimony, arguing that it would be confusing to the jury. The district court sustained the objection on the grounds that the question had already been answered.

The government also called INS Inspector William Allen, who inspected Brown's visa at Dulles. Inspector Allen testified that Brown appeared nervous and displayed a demeanor consistent with actions

---

*Brown's motion for sanctions was also based on previously undisclosed statements by the government. The district court granted that portion of the motion.

he was trained to recognize as those of a person who is "not being completely honest or concealing a fact." Brown objected to this testimony, arguing that Allen was offering improper expert testimony, which he had not been qualified to do. The district court overruled the objection, stating, "An ordinary person can testify to emotional states of other people or they appeared a certain way, at least how they appear."

At the conclusion of the retrial, the jury convicted Brown of violating 18 U.S.C. § 1546(a). The district court sentenced him to six months in prison with credit for time served, three years of supervised release with special conditions related to INS deportation proceedings, and a special assessment of $100.00. Brown timely filed this appeal.

## II.

We apply a clear error standard in reviewing a district court's denial of a motion to dismiss an indictment based on alleged prosecutorial misconduct. *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995), *overruled on other grounds by United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000). "A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Breza*, 308 F.3d 430, 433 (4th Cir. 2002) (citing *Faulconer v. Comm'r.*, 748 F.2d 890, 895 (4th Cir. 1985)) (internal quotations omitted). We review a district court's ruling to admit the testimony of lay and expert witnesses for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) ("We have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings."); *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 110 (4th Cir. 1991). An abuse of discretion occurs when a district court makes an error of law. *United States v. Barile*, 286 F.3d 749, 753 (4th Cir. 2002). Where we find that a district court made an error of law with respect to evidentiary rulings, we conduct a harmless error review under Federal Rule of Criminal Procedure 52. *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997) ("In order to find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that

happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." (internal quotations and citations omitted)).

### III.

Brown alleges that the district court: (1) erred in finding the government did not violate Local Rule 83.5; (2) abused its discretion by permitting an expert witness to testify as to whether documented evidence was consistent with a particular type of fraud; and (3) abused its discretion by permitting a lay witness to testify as to Brown's truthfulness. We examine each of these issues in turn.

### A.

We begin with Brown's asserted violation of Local Rule 83.5. Under *Local Rule 83.5, United States District Court for the Eastern District of Virginia*:

> No attorney or party litigant shall personally, or through any investigator or other person acting for the attorney or party litigant, interview, examine or question any juror or alternate juror with respect to the verdict or deliberations of the jury in any action, civil or criminal, except on leave of such court granted upon good cause shown and upon such conditions as the court shall fix.

The Eastern District of Virginia has held that the purpose of this rule is to allow jurors to "return to their normal lives [at the conclusion of the case] without fear or concern of attorneys, or attorneys' representatives, knocking on their door or calling them at home in the evening to question them about the whys and wherefores of their respective verdicts." *Daniel v. Jones*, 39 F. Supp. 2d 635, 637-38 (E.D. Va. 1999). It follows, therefore, that a violation of the rule occurs when an attorney or a representative of the attorney initiates contact with a juror regarding the jury's verdict or deliberations. The evidence in the record indicates that the juror sought out Inspector Trump to discuss the jury deliberations. Inspector Trump testified that no one instructed him to find out what the verdict was or what the division was between

the jurors. The Assistant U.S. Attorney, Mr. Rossi, also testified that Inspector Trump was not asked to try to find out the division of the jury.

Further, there is no evidence in the record that shows that Inspector Trump interviewed, examined or questioned the juror. To the contrary, the record is undisputed that Inspector Trump nodded, smiled, and periodically responded to the juror, but did not ask him questions or press him further. Because Inspector Trump did not initiate contact with the juror and because Brown failed to demonstrate that the government interviewed, examined or questioned the juror with respect to jury deliberations, we find that there was no violation of Local Rule 83.5 and affirm the district court's denial of Brown's motion for sanctions based on the juror contact.

### B.

Next, Brown claims that the district court abused its discretion in permitting the testimony of Christopher Misciagno. Misciagno testified that the characteristics of the altered visa Brown held were consistent with the type of visa fraud prevalent in Ghana in 2001. He was asked the following questions and gave the following responses:

> Q.  Now do you have an expert opinion based upon your knowledge, training, skill, and background as to whether or not the information contained on Government Exhibit 8C, the nonimmigrant visa application detail in the name of Kwame Amoasi, as well as the information contained in the sealed documents 8A and 9 and the passport, Government Exhibit 2 as well as the visa, based upon these documents and your own training and experience, is the evidence of these documents and the evidence you've reviewed in this case consistent with the type of visa fraud that you were seeing in the summer of 2001 in Ghana?

> A.  Yes, sir. It's a perfect example of that, that exact type of fraud that I wrote the report on.

> Q.  And tell the members of the jury why.

A.  Mr. Kwame Amoasi, based upon the information that I have as part of these exhibits, it shows that he probably had a fairly easy time obtaining a visa in the embassy in Accra. He then appears to have taken this visa, passed it off to a visa fixer, who made, our estimation was, about $50 for the payment of his services to go and obtain the visa.

Brown's lawyer objected to this testimony, which the district court sustained on the grounds that the question had been asked and answered. Misciagno had earlier testified that the visa looked as though it had been altered and provided examples of the errors on the visa that led him to that conclusion. Brown did not object to the earlier testimony, nor did he, after his later objection was sustained, move to strike Misciagno's comments from the record or request that the jury be instructed to disregard Misciagno's prior testimony. Brown now contends that the testimony was impermissibly prejudicial to him because Misciagno was stating his belief that Brown was guilty of the crime. However, Brown has not preserved this issue for appeal. *Kollsman, a Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 707 (4th Cir. 1993) ("To preserve an issue for appeal, an objection must be timely and state the grounds on which it was based." (citations omitted)). His later objection was sustained, and there were no other objections made to Misciagno's testimony. Therefore, we find that there was no error.

## C.

Finally, Brown contends that the district court abused its discretion by permitting a lay witness to testify as to his truthfulness. During retrial, Inspector Allen testified that Brown appeared nervous while being questioned. Allen explained his opinion by stating,

At first, it [Brown's demeanor] was about normal. As I started to pry and ask him questions, he became nervous. He started searching the room. In training, we learn certain telltale signs when a person is not being completely honest or they're concealing a fact. There's certain body language that they'll display.

Brown objected at trial, arguing that Inspector Allen was proffering unqualified expert testimony. The district court judge overruled the objection, concluding that Inspector Allen was permitted to explain to the jury why he made the statement that Brown was nervous. Brown asserts that this ruling constitutes error because it allowed the witness to give an opinion as to Brown's truthfulness and honesty. We agree.

A lay witness may testify in the form of an opinion or inference provided that the testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also MCI Telecomm. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) ("A lay witness in a federal court proceeding is permitted under *Fed. R. Evid. 701* to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived." (internal quotations and citation omitted)). The district court overruled Brown's objection because it found that Inspector Allen's testimony provided an explanation of why he thought Brown was nervous. However, Inspector Allen's testimony went further than that. Inspector Allen's statement that Brown started searching the room provided an explanation for his conclusion that Brown was nervous. His subsequent statement, "In training, we learn certain telltale signs when a person is not being completely honest or they're concealing a fact," did not explain Inspector Allen's conclusion that Brown was nervous. Instead, it was testimony that Brown's nervousness meant that he was not being completely honest or concealing a fact. This testimony is beyond the scope of Rule 701. While Inspector Allen is permitted to explain why he thought Brown was nervous, he cannot testify as to whether Brown was being truthful or was concealing a fact. *See United States v. Cecil*, 836 F.2d 1431 (4th Cir. 1988) (holding that the credibility of a witness is an issue for the jury (citing *United States v. Wertis*, 505 F.2d 683, 685 (5th Cir. 1975)). Therefore, we conclude that the district court erred in admitting that portion of Inspector Allen's testimony that speculated as to Brown's credibility.

Although the district court committed error in admitting that portion of Inspector Allen's testimony, we find that the error is harmless. *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). The dis-

trict court's error was harmless because the errant evidence presented by Inspector Allen did not substantially sway the verdict. The errant portion of Inspector Allen's testimony was his statement that he is trained to recognize signs "when a person is not being completely honest or they're concealing a fact." However, a reasonable juror could conclude that Brown was not being honest or was concealing a fact based on Inspector Allen's testimony concerning the facts upon which he based his conclusion that Brown was nervous. Inspector Allen testified that Brown initially appeared calm, but became nervous as the questioning progressed; he began searching the room and assumed a "fight-or-flight" stance.

The most telling evidence that could lead a reasonable juror to find Brown was not being honest is the testimony of Brown himself. Brown testified that he went to the American embassy in Ghana to secure a visa, that he paid $45 to a woman working inside the embassy, and that, after paying the money, he received a yellow appointment sheet for his interview. Brown also testified that, when he returned to the embassy for his appointment, he was interviewed for approximately twenty minutes and the yellow appointment sheet was taken back from him by the consular. This testimony was contradicted by Misciagno, who provided a different account of the process by which visas are obtained in Ghana. Misciagno testified that: (1) the guards would have handed visa applications to individuals outside the gate — there was no reason for the applicant to come inside the embassy; (2) the appointment sheet to come into the embassy for an interview was white, not yellow; (3) the consular service did not take money for an application for a nonimmigrant visa; (4) during the time that Brown allegedly received his visa, applicants were interviewed, at most, for five minutes; and (5) interview sheets were not taken back from applicants, because the applicant would receive the sheet after the interview as proof that they had paid the money for the application. Thus, a reasonable juror could have concluded, based upon Misciagno's contradicting testimony, that Brown was being dishonest about how he obtained the visa.

In light of the testimony of Inspector Allen and Misciagno, we conclude that a reasonable juror could find that Brown was not being honest or was concealing a fact, and thus knowingly possessed the fraudulent visa. Therefore, we find that, although the district court

erred in admitting the portion of Inspector Allen's testimony that speculated as to Brown's credibility, the error did not substantially sway the judgment and was therefore harmless.

## IV.

For the foregoing reasons, we affirm the district court.

*AFFIRMED*